# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Butler Area School District; Alvin
Vavro, in his official capacity as
President of the Board of School
Directors; Jennifer Cummings, in
her official capacity as Vice President
of the Board of School Directors;
John Conrad, in his official capacity
as a member of the Board of
School Directors; Jennifer Daniels-
Wells, in her official capacity as a
member of the Board of School
Directors; Bill Halle, in his official
capacity as a member of the
Board of School Directors; Thomas
Harrison, in his official capacity as a
member of the Board of School
Directors; Alice Nunes, in her
official capacity as a member of the
Board of School Directors; Gary
Shingleton, in his official capacity
as a member of the Board of
School Directors; Mary Waggoner,
in her official capacity as a member
of the Board of School Directors;
Philip A. Melnick, Sr. and Chattle
Melnick, husband and wife, as
parents of three children within
the Butler Area School District, as
taxpayers within the Butler Area School
District; and as voters within the Butler
Area School District; Michael Carben
and Julie Carben, husband and wife,
as parents of two children within the
Butler Area School District, as
taxpayers within the Butler Area School
District, and as voters within the Butler
Area School District; Michele Curzi,
as a parent of five children within the
Butler Area School District, as a
taxpayer within the Butler Area School
District, and as a voter within the Butler

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Area School District; Laura Ice, as a :
parent of two children within the Butler :
Area School District, as a taxpayer :
within the Butler Area School District, :
and as a voter within the Butler Area :
School District; James Lindsay and :
Meredith Lindsay, husband and wife, :
as parents of one child within the Butler :
Area School District, as taxpayers :
within the Butler Area School District, :
and as voters within the Butler Area :
School District; and Brad D. Leslie, :
as a parent of a student-athlete within :
the Butler Area School District, as a :
taxpayer within the Butler Area School :
District, and as a voter within the Butler :
Area School District, :
                Petitioners :
                             : No. 647 M.D. 2020
          v. :
                             : Argued: June 9, 2021
Dr. Rachel Levine, Secretary of the :
Pennsylvania Department of Health; :
Noe Ortega, acting Secretary of the :
Pennsylvania Department of Education; :
and The Honorable Thomas W. Wolf, :
Governor of Pennsylvania, :
                Respondents :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge[1]
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE LORI A. DUMAS, Judge[2]

---

[1] Judge Cohn Jubelirer became the President Judge of this Court in January 2022, after this case was argued.

[2] This case was argued before a panel of this Court that included Judge Crompton. Judge Crompton's service with this Court ended on January 2, 2022, before the Court reached a decision on

**(Footnote continued on next page…)**

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED: October 3, 2022


Before the Court are the preliminary objections filed by Dr. Rachel Levine, Secretary of the Pennsylvania Department of Health (Secretary of Health or Secretary Levine); Noe Ortega, Acting Secretary of the Pennsylvania Department of Education (Acting Secretary of Education or Acting Secretary Ortega); and the Honorable Thomas W. Wolf, Governor of Pennsylvania (Governor or Governor Wolf) (collectively, Respondents)[3] to a Petition for Review (Petition) filed in our original jurisdiction by the Butler Area School District (School District), members of the School District's Board of School Directors (together, Board Petitioners),[4] and several parents of students within the School District (Parent Petitioners)[5] (collectively, Petitioners).

---

the pending preliminary objections. Accordingly, Judge Dumas replaced Judge Crompton as a panel member and considered the matter as submitted on the briefs.

[3] As of the filing of this Memorandum Opinion, Secretary Levine is no longer the Secretary of Health. She was succeeded by Acting Secretary of Health Alison Beam, who remained Acting Secretary until her resignation in December 2021. Thereafter Governor Wolf named Keara Klinepeter as Acting Secretary of Health. Klinepeter resigned the position in April 2022, at which time Governor Wolf named Denise Johnson as Acting Secretary of Health. Ms. Johnson remains Pennsylvania's Acting Secretary of Health to date.

Although the nomination of Acting Secretary Ortega was confirmed by the Pennsylvania Senate in 2021, he resigned from office effective April 29, 2022. Governor Wolf named Eric Hagarty as Acting Secretary of Education to replace Mr. Ortega. Mr. Hagarty remains Pennsylvania's Acting Secretary of Education to date.

[4] The individual Board Petitioners, proceeding in their official capacities only, are Alvin Vavro, Jennifer Cummings, John Conrad, Jennifer Daniels-Wells, Bill Halle, Thomas Harrison, Alice Nunes, Gary Shingleton, and Mary Waggoner. (Petition ¶¶ 4-12.)
[5] The Parent Petitioners are Philip A. Melnick, Sr. and Chattle Melnick, Michael Carben and Julie Carben, Michele Curzi, Laura Ice, James Lindsay and Meredith Lindsay, and Brad D. Leslie.
**(Footnote continued on next page…)**

The Petition challenges various orders and related directives issued by Respondents to public schools in the Commonwealth during the COVID-19 pandemic. Petitioners ask this Court to set aside the challenged orders and directives and issue permanent injunctions enjoining Respondents from taking like action in the future.

Respondents lodge several preliminary objections to the Petition, all of which demur to Petitioners' claims on various grounds.[6] After careful review, we overrule the preliminary objections in their entirety.

## FACTS AND PROCEDURAL HISTORY

### A. Facts Alleged in the Petition[7]

Petitioners bring their action pursuant to the Declaratory Judgments Act, 42 Pa. C.S. §§ 7531-7541.[8] They aver as follows.

---

(Petition ¶¶ 14-19.) Although the caption of Petitioners' filing lists "Chattle" Melnick as a Parent Petitioner, the verification filed on April 16, 2021, is signed by Philip A. and "Chattele" Melnick.

[6] As discussed *infra*, two out of seven of Respondents' original preliminary objections have been withdrawn. All of the remaining preliminary objections demur to the Petition on various grounds.

[7] "In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Pennsylvania Virtual Charter School v. Department of Education*, 244 A.3d 885, 889 (Pa. Cmwlth. 2020) (*en banc*).

[8] Section 7532 of the Declaratory Judgments Act provides as follows:

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

**(Footnote continued on next page…)**

4

On November 23, 2020, the Secretary of Health issued an order, effective November 24, 2020, entitled "Order of the Secretary of the Pennsylvania Department of Health Directing Public School Entities in Counties with Substantial Community Transmission to Attest to Health and Safety Protocols" (Attestation Order). (Petition Ex. A.) The Attestation Order required public school entities with in-person instruction to attest, on a form provided by the Department of Education (Attestation Form), that (1) they had read the "Updated Order of the Secretary of the Pennsylvania Department of Health Requiring Universal Face Coverings" and the "Recommendation for Pre-K to 12 Schools Following Identification of a Case(s) of COVID-19," and (2) they were complying, would comply, and/or would continue to comply with both. *Id.*

The Attestation Order was issued to school districts in counties that exhibited two consecutive weeks of substantial transmission of COVID-19. (Petition ¶ 30.) The Board Petitioners received the Attestation Order in an email sent from Acting Secretary Ortega and signed by both Acting Secretary Ortega and Secretary Levine ("Attestation Email"). (Petition ¶¶ 32-33, Ex. D.) The Attestation Email stated that the Attestation Order "provides authority to [the Department of Education] to develop and distribute the [A]ttestation [F]orm and directs a mandatory move to remote learning if a public school entity does not sign the Attestation." (Petition ¶ 34; Ex. D.) The Attestation Email further stated that, for districts in counties under a substantial disease transmission designation for at least two consecutive weeks, in-person instruction "may not occur until the [A]ttestation [F]orm is signed by the chief public school administrator and the chair/president of the governing body of the public school entity and submitted via email to [the Department of Education] by November 30, 2020." (Petition ¶ 36; Ex. D.) Public school entities that elected not to continue in-

---

42 Pa. C.S. § 7532.

person instruction nevertheless also were required sign and submit the Attestation Form. (Petition ¶ 37; Ex. D.) Petitioners complied with the Attestation Order but, because they viewed it as a usurpation of their statutory authority, they did so under protest. (Petition ¶¶ 41-42.)[9]

On December 10, 2020, Governor Wolf issued an order entitled "Order of the Governor of the Commonwealth of Pennsylvania Directing Limited-Time Mitigation" (Governor's Mitigation Order). (Petition Ex. B.) The Governor's Mitigation Order, *inter alia*, suspended in-person extracurricular activities, interscholastic and intrascholastic athletics, and interstate and intrastate sports leagues and tournaments. *Id.* By its terms, the Governor's Mitigation Order took effect on December 12, 2020, and expired on January 4, 2021.[10] (Petition Ex. B.) Meanwhile, the Secretary of Health issued a separate mitigation order (Secretary's Mitigation Order) that, in relevant part, is substantially identical to the Governor's Mitigation Order (together, Mitigation Orders). The Secretary's Mitigation Order relied upon the same authority as the Attestation Order and, like the Governor's Mitigation Order, took effect on December 12, 2020, and expired on January 4, 2021.

---

[9] The Attestation Order cited as legal authority section 5 of the Disease Prevention and Control Law of 1955, Act of April 23, 1956, P.L. 1510, *as amended*, 35 P.S. § 521.5 (DPCL); sections 2102(a) and 2106 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§ 532(a), 536 (Administrative Code); the Department of Health's regulations at 28 Pa. Code §§ 27.60-27.68, and section 8 of the Department of Health Act, Act of April 27, 1905, P.L. 312, *as amended,* 71 P.S. § 1403(a). *Id.* The Attestation Order took effect on November 24, 2020, and continues "until further notice." (Petition Ex. A.)

[10] The Governor cited as legal authority for the Mitigation Order various subsections of section 7301 of the Emergency Management Services Code (Emergency Code), 35 Pa. C.S. § 7301. *See* 35 Pa. C.S. §§ 7301(a) (responsibility for "meeting the dangers to this Commonwealth and people presented by disasters"); 7301(b) (authority to "issue, amend and rescind executive orders, proclamations and regulations which shall have the force and effect of law"); and 7301(c) (authority to declare disaster emergencies).

6

Petitioners filed this action on December 14, 2020. They rely on constitutional and statutory provisions in asking this Court to both invalidate the Attestation and Mitigation Orders and issue permanent injunctions barring similar future action. They first contend that Respondents' orders involve legislative, rather than executive, prerogatives, running afoul of article I, section 12 ("No power of suspending laws shall be exercised unless by the Legislature or by its authority.") and article III, section 14 ("The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth.") of the Pennsylvania Constitution. Pa. Const. art. I, § 12; Pa. Const. art. III, § 14. Petitioners secondly argue that the challenged orders conflict with various provisions of the Public School Code of 1949 ("School Code"), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702, usurping the powers granted by that law to local boards of school directors. *See* sections 520 and 520.1 of the School Code, 24 P.S. §§ 5-520, 5-520.1.[11]

### B. Subsequent Developments

Several relevant legal developments have transpired since the filing of Respondents' preliminary objections. When the Attestation and Mitigation Orders were issued, Governor Wolf had issued a Proclamation of Disaster Emergency ("Disaster Proclamation") under section 7301(c) of the Emergency Code, 35 Pa. C.S. § 7301(c).[12] Governor Wolf continuously renewed the Disaster Proclamation pursuant

---

[11] Section 520.1 was added by the Act of January 14, 1952, P.L. (1951).

[12] Section 7301(c) provides, in relevant part, as follows:

(c) Declaration of disaster emergency.--A disaster emergency shall be declared by executive order or proclamation of the Governor upon finding that a disaster has occurred or that the occurrence or the threat of a disaster is imminent. The state of

**(Footnote continued on next page…)**

7

to his powers under that section. However, on May 18, 2021, the voters of the Commonwealth approved two amendments to the Pennsylvania Constitution that place limits on the duration of such declarations. The first amended article III, section 9 of the Pennsylvania Constitution and authorizes the General Assembly to extend or terminate a declaration of a disaster emergency by a simple majority vote. *See* Pa. Const. art. III, § 9.[13] The second added section 20 to article IV of the Pennsylvania Constitution, which, *inter alia*, limits a declaration of a disaster emergency to a period of 21 days absent an extension by concurrent resolution of the General Assembly. *See* Pa. Const. art. IV, § 20.[14] On June 10, 2021, the General Assembly approved a

---

disaster emergency shall continue until the Governor finds that the threat or danger has passed or the disaster has been dealt with to the extent that emergency conditions no longer exist and terminates the state of disaster emergency by executive order or proclamation, but no state of disaster emergency may continue for longer than 90 days unless renewed by the Governor. The General Assembly by concurrent resolution may terminate a state of disaster emergency at any time.

35 Pa. C.S. § 7301(c).

[13] Article III, section 9 now provides as follows:

Every order, resolution or vote, to which the concurrence of both Houses may be necessary, except on the questions of adjournment or termination or extension of a disaster emergency declaration as declared by an executive order or proclamation, or portion of a disaster emergency declaration as declared by an executive order or proclamation, shall be presented to the Governor and before it shall take effect be approved by him, or being disapproved, shall be repassed by two-thirds of both Houses according to the rules and limitations prescribed in case of a bill.

Pa. Const. art. III, § 9. This amendment followed our Supreme Court's decision in *Wolf v. Scarnati*, 233 A.3d 679 (Pa. 2020) (decided July 1, 2020), in which that Court held that the General Assembly was not empowered to terminate a declaration of disaster emergency by concurrent resolution.

[14] Article IV, section 20 now provides as follows:

**(Footnote continued on next page…)**

8

concurrent resolution, House Resolution 106, 2021 Gen. Assemb. Reg. Sess. (Pa. 2021), terminating the Disaster Proclamation, as amended and renewed. To date, no new proclamations have been issued.

## DISCUSSION

In their preliminary objections II through VI,[15] Respondents object to the Petition on the following grounds: (1) because the DPCL and Administrative Code

(a) A disaster emergency declaration may be declared by executive order or proclamation of the Governor upon finding that a disaster has occurred or that the occurrence or threat of a disaster is imminent that threatens the health, safety or welfare of this Commonwealth.

(b) Each disaster emergency declaration issued by the Governor under subsection (a) shall indicate the nature, each area threatened and the conditions of the disaster, including whether the disaster is a natural disaster, military emergency, public health emergency, technological disaster or other general emergency, as defined by statute. The General Assembly shall, by statute, provide for the manner in which each type of disaster enumerated under this subsection shall be managed.

(c) A disaster emergency declaration under subsection (a) shall be in effect for no more than twenty-one (21) days, unless otherwise extended in whole or part by concurrent resolution of the General Assembly.

(d) Upon the expiration of a disaster emergency declaration under subsection (a), the Governor may not issue a new disaster emergency declaration based upon the same or substantially similar facts and circumstances without the passage of a concurrent resolution of the General Assembly expressly approving the new disaster emergency declaration.

Pa. Const. art. IV, § 20.

[15] Respondents initially lodged seven preliminary objections to the Petition, all but one in the form of demurrers. In their first preliminary objection, Respondents demurred to what they perceived to be a procedural due process claim. Respondents withdrew the objection after Petitioners clarified that they were not pursuing such a claim. *See* Answer ¶ 15; Respondents' Br. at 10 n.5. In their seventh preliminary objection, Respondents challenged the adequacy of the original verification attached to the Petition, which was executed by only a single Petitioner, Alvin Vavro. Respondents argued that the verification violated Pa.R.Civ.P. 206.3 because certain averments of fact made by the
**(Footnote continued on next page…)**

explicitly authorized Secretary Levine's issuance of the Attestation Order, it did not usurp legislative prerogatives or contravene any Pennsylvania law (Preliminary Objection II); (2) Secretary Levine did not delegate enforcement authority to Acting Secretary Ortega and, even if she did delegate that authority, the delegation was permissible under Pennsylvania law (Preliminary Objection III); (3) the Mitigation Orders were a proper exercise of Governor Wolf's police powers under the Emergency Code and Secretary Levine's powers under the DPCL and Administrative Code, which powers override the School Code (Preliminary Objections IV and V); and (4) Petitioners' request for declaratory relief fails to set forth an actual controversy, rendering moot the issues raised in the Petition (Preliminary Objection VI).[16]

## A. Preliminary Objection VI

We first address the question raised in Respondents' preliminary objection VI, namely, whether Petitioners' claims are moot. To be clear, this objection does not on its face concern Secretary Levine's Attestation Order, which does not have an expiration date. Respondents on this ground seek dismissal only of "Petitioners' claims related to the December 10, 2020 limited time mitigation orders." (Preliminary Objections at 19, Wherefore Clause). Respondents contend that because the two Mitigation Orders have expired, there remains no controversy between the parties

Parent Petitioners could not be verified by Vavro, who had no relevant personal knowledge of those facts. On April 16, 2021, and May 24, 2021, Petitioners filed additional verifications for all named Petitioners. Respondents accordingly withdrew Preliminary Objection VII at oral argument. Thus, only preliminary objections II through VI remain before the Court for disposition.

[16] The Court received post-submission filings on August 4, 2021 (Respondents' "Notice of Supplemental Authority"), and December 28, 2021 (Petitioners' "Application to Submit Supplemental Authority"). The submissions include this Court's unreported decision in *County of Allegheny v. The Cracked Egg, LLC,* (Pa. Cmwlth., No. 101 C.D. 2021, filed July 23, 2021), and the Pennsylvania Supreme Court's decision in *Corman v. Acting Secretary of the Pennsylvania Department of Health*, 266 A.3d 452 (Pa. 2021). The Court will receive and consider both submissions to the extent they are relevant.

10

giving Petitioners standing to seek declaratory relief. Granting such relief, Respondents argue, would amount to this Court rendering a declaration concerning past conduct or an advisory opinion. Petitioners counter that Respondents took the opposite position in their brief to the United States Court of Appeals for the Third Circuit in *County of Butler v. Governor*, 8 F.4th 226 (3d Cir. 2021).

In considering whether a declaratory judgment action remains an actual controversy, we apply well-settled principles regarding mootness and its exceptions. "[W]hether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction." *Brouillette v. Wolf*, 213 A.3d 341, 357 (Pa. Cmwlth. 2019) (citation omitted). "The presence of antagonistic claims indicating imminent and inevitable litigation coupled with a clear manifestation that the declaration sought will be of practical help in ending the controversy are essential to the granting of relief by way of declaratory judgment. . . ." *Id.* (quoting *Gulnac v. South Butler School District*, 587 A.2d 699, 701 (Pa. 1991)).

There are certain exceptions to the mootness doctrine, which we consider here. Where an issue has been rendered moot, a court may nevertheless address the merits of the claim where "the conduct complained of is capable of repetition yet likely to evade review, where the case involves issues important to the public interest or where a party will suffer some detriment without the court's decision." *J.J.M. v. Pennsylvania State Police*, 183 A.3d 1109, 1112 (Pa. Cmwlth. 2018). The Court finds that the issues raised in the Petition are not moot. Notwithstanding the intervening circumstances that have transpired since the Petition was filed, it nevertheless presents an actual controversy that this Court can adjudicate. First, and as Respondents appear

11

to concede, Secretary Levine's Attestation Order has not expired and at least technically continues to require public school entities to comply with its requirements. The issues raised in the Petition regarding the powers of the Secretary of Health under the DPCL, the Administrative Code, and the Department of Health's regulations are not tied to the declaration of a disaster emergency. The Attestation Order claimed outright the authority under those Pennsylvania laws, and Petitioners challenge the Secretary of Health's actions based on their alleged contravention of the School Code. Thus, regarding the Attestation Order and its related directives, this action has not been rendered moot.

Regarding the Mitigation Orders, both of which undisputedly have expired on their own terms, the Court concludes that the issues raised in the Petition remain viable. Notwithstanding the amendments to the Pennsylvania Constitution that limit the length of disaster proclamations that the Governor can issue unilaterally, nothing in the changes to Pennsylvania law necessarily prevents these kinds of orders, particularly from the Secretary of Health, from being issued. As such, we conclude that such orders are capable of repetition and are likely to evade review, particularly now given the short time span of the Governor's ability to issue disaster proclamations. Given the broad implications of these orders and the fact that the COVID-19 pandemic has abated, but not ended, the likelihood that such orders could and would be issued in the future is more than a theoretical possibility. There is, rather, a "reasonable expectation that the same complaining party would be subjected to the same action again." *Mistich v. Pennsylvania Board of Probation and Parole,* 863 A.2d 116, 121 (Pa. Cmwlth. 2004) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

Because the Court concludes that the issues raised in the Petition are not moot, the Court will overrule this preliminary objection.

12

**B. Preliminary Objection II**

In their second preliminary objection, Respondents contend that Secretary Levine's Attestation Order and its related directives expressly are permitted by the DPCL and the Administrative Code. They cite section 3(b) of the DPCL, which states that the Department of Health "shall be responsible for the prevention and control of communicable and non-communicable disease in any municipality which is not served by a local board or department of health, including disease control in public and private schools." 35 P.S. § 521.3(b). Respondents also cite the Department of Health's authority under section 5 of the DPCL to "carry out the appropriate control measures" with respect to such a disease. 35 P.S. § 521.5. Under the Administrative Code, Respondents stress that the duties of the Department of Health are to "protect the health of the people of this Commonwealth, and to determine and employ the most efficient and practical means for the prevention and suppression of disease," 71 P.S. § 532(a), and "to declare certain diseases to be communicable" and "establish such regulations for the prevention of the spread of such diseases." 71 P.S. § 536(a). Thus, Respondents contend that Petitioners' claims regarding Secretary Levine's actions fail as a matter of law.

The Court disagrees. The scope of the Secretary of Health's authority under the DPCL and Administrative Code was addressed in our Supreme Court's recent decision in *Corman v. Acting Secretary of the Pennsylvania Department of Health*, 266 A.3d 452 (Pa. 2021). In *Corman*, the Court addressed, among other issues, the question of whether, where no gubernatorial disaster emergency has been declared, the Secretary of Health can act unilaterally under the provisions of the DPCL and Administrative Code to issue orders that carry the force of law without going through the otherwise required steps in the regulatory process. The Secretary of Health issued

13

the mask mandate at issue in *Corman* on August 31, 2021, more than two months after Governor Wolf's Disaster Proclamation, as amended and renewed, was terminated by the General Assembly. The Supreme Court in *Corman* concluded that the non-emergency measures available to the Secretary of Health to control disease under the DPCL and the Administrative Code are "limited to those adopted by formal rule and regulation." *Id.* at 477. *See also id.* at 486 ("In sum, absent a gubernatorial disaster emergency declaration suspending the framework of laws governing agency rulemaking in Pennsylvania, the Department [of Health] was obligated to follow . . . the Regulatory Review Act[17], the Commonwealth Documents Law[18], and the Commonwealth Attorneys Act[19] before promulgating a new disease control measure with the force of law.").

Although the Court in *Corman* did not address whether, and to what extent, Secretary of Health orders issued during a disaster emergency proclamation may supersede provisions of the School Code, it did hold that the Secretary of Health's powers under the DPCL and the Administrative Code are not unlimited and may not, in ordinary instances, circumvent the ordinary rulemaking process. The Court opined that the general policy provisions of the DPCL and the Administrative Code did not, in themselves, dictate *how* the Secretary of Health could implement disease control measures. *See id.* at 476 ("[T]he [DPCL] expressly cabined the [Department of Health's] power to carry out disease control by restricting the available measures to those promulgated by formal rule or regulation."); 477 (the general public health policy

---

[17] Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1-745.14.

[18] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. § 1102, 1201-1208, 1602; 45 Pa. C.S. §§ 501-907.

[19] Act of Oct. 15, 1980, P.L. 950, *as amended*, 71 P.S. §§ 732-101 - 732-506.

14

declarations in section 2102(a) of the Administrative Code and section 8(a) of the Department of Health Act do not "permit the Department or the Secretary of Health to act by whim or fiat in all matters concerning disease"). Thus, we cannot conclude that those laws, also relied upon by Respondents here, preclude as a matter of law Petitioners' claims regarding the Attestation Order and its alleged contravention of the School Code. We accordingly will overrule Respondents' second preliminary objection.[20]

### C. Preliminary Objection III

In their third preliminary objection, Respondents rely upon the same statutory authority cited above to counter Petitioners' suggestion that Secretary Levine improperly delegated authority to Acting Secretary Ortega to enforce the Attestation

---

[20] For example, the School Code grants local school districts broad powers to act in times of war and in unforeseen emergencies. *See* 24 P.S. §§ 5-520, 5-520.1, respectively. Although we do not now decide the issue, we note that the Court in *Corman* opined at length regarding the limitation of the Department of Health's powers under the DPCL and the Administrative Code, the former of which limits the Department's ability to impose disease control measures "as is provided by rule or regulation." *Corman*, 266 A.3d at 476 (quoting 35 P.S. § 521.5). *See also id.* (quoting section 2106 of the Administrative Code, 71 P.S. § 536(b) (Administrative Code authorizes the Department of Health to establish and enforce quarantines, but only "in such manner, for such period, and with such powers, as may now or hereafter be provided by law")). Further, although the Department of Health's regulations authorize several discrete categories of disease control measures (including isolation, surveillance, segregation, quarantine or modified quarantine, and "any other disease control measure the Department or the local health authority considers to be appropriate for the surveillance of disease, when the disease control measure is necessary to protect the public from the spread of infectious agents"), *see* 28 Pa. Code § 27.60(a), the Court in *Corman* nevertheless concluded that the "open-ended, universal" school mask mandate at issue fell into none of these categories, including the "other disease control" catch-all provision. *Id.* at 478-83, 483. Because the Governor's Disaster Proclamation had ended, the Department of Health could not issue the mask mandate as a disease control measure with the force of law without going through the ordinary rule- and regulation-making process. *Id.* at 486-87.

15

Order. Respondents contend that Secretary Levine only designated the Department of Education as the agency to receive the signed Attestation Forms and did not designate enforcement authority. Respondents nevertheless argue that even if enforcement authority was delegated, such a delegation was within the Department of Health's duty to "carry out the appropriate control measures" in response to the COVID-19 pandemic. 35 P.S. § 521.5.

The DCPL and the Administrative Code provisions relied upon by Respondents do not specifically address the issue of whether the Secretary of Health may delegate enforcement of disease control measures to another executive department. Further, the Court cannot, without more facts, determine whether and to what extent the Secretary of Health in fact designated enforcement authority to the Department of Education. The Court cannot say that Petitioners fail to state a claim as a matter of law. Respondents third preliminary objection therefore will be overruled.

### D. Preliminary Objections IV and V

In their fourth and fifth preliminary objections, Respondents contend that the Mitigation Orders, which suspended sporting events and in-person extracurricular activities for a three-week period, were a proper exercise of the Commonwealth's police powers and did not unlawfully usurp the powers of the General Assembly or local school boards. Respondents rely upon the Emergency Code and our Supreme Court's discussion of the Commonwealth's police powers in *Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020). They stress that, under the Emergency Code, the Governor has "broad emergency management powers" when responding to a "disaster," including the authority to "issue and rescind executive orders, proclamations, and regulations which shall have the force and effect of law." *Id.* at 885 (quoting 35 Pa. C.S. § 7301(b)). These broad emergency powers, Respondents note,

16

are "firmly grounded in the Commonwealth's police power . . . 'to promote the public health, morals or safety and the general well-being of the community.'" *Id.* at 886 (quoting *Pennsylvania Restaurant and Lodging Association v. City of Pittsburgh*, 211 A.3d 810, 817 (Pa. 2019)). They thus argue that "[t]he mere fact that the Board of School Directors may be authorized to act during a temporary emergency does not mean their powers override the Commonwealth's police powers." (Respondents' Brief at 15.) To support the Secretary of Health's Mitigation Order, Respondents again rely on the powers granted by the DCPL and the Administrative Code to argue that Secretary Levine was authorized to issue her Mitigation Order restricting sporting events and extracurricular activities.

Petitioners respond by arguing that the Governor's police powers cannot be construed to override the powers of local school boards set forth in the School Code. They base their argument chiefly on the fact that, prior to the recent constitutional amendments, the Governor conceivably could declare a disaster emergency and extend the declaration indefinitely "to the point where he is running local school districts." (Petitioners' Brief at 26.) Although that contingency is now foreclosed by the recent constitutional amendments, the question remains whether the Commonwealth's police powers in disaster emergencies may override specific grants of emergency powers given to local public school districts. Respondents have not established that Petitioners' claim in this regard fails as a matter of law.[21] Accordingly, Preliminary Objections IV and V will be overruled.

---

[21] Although we recognize that our Supreme Court in *Friends of Danny DeVito* interpreted broadly the Commonwealth's police powers and the Governor's emergency management powers under the Emergency Code, *see Friends of Danny DeVito*, 227 A.3d at 186-98, the Court's decision did not address specifically the issue presented by Petitioners here; namely, whether the Governor's Mitigation Order, issued pursuant to his police and emergency powers, impermissibly contravenes the School Code and usurps the powers granted thereunder to local school boards.

17

## CONCLUSION

For the foregoing reasons, the Court overrules Respondents' Preliminary Objections II through VI.


_____
PATRICIA A. McCULLOUGH, Judge


Judge Wallace did not participate in the decision for this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Butler Area School District; Alvin　　　　:
Vavro, in his official capacity as　　　　:
President of the Board of School　　　　:
Directors; Jennifer Cummings, in　　　　:
her official capacity as Vice President　　:
of the Board of School Directors;　　　　:
John Conrad, in his official capacity　　　:
as a member of the Board of　　　　　:
School Directors; Jennifer Daniels-　　　:
Wells, in her official capacity as a　　　:
member of the Board of School　　　　:
Directors; Bill Halle, in his official　　　:
capacity as a member of the　　　　　:
Board of School Directors; Thomas　　　:
Harrison, in his official capacity as a　　:
member of the Board of School　　　　:
Directors; Alice Nunes, in her　　　　:
official capacity as a member of the　　　:
Board of School Directors; Gary　　　　:
Shingleton, in his official capacity　　　:
as a member of the Board of　　　　　:
School Directors; Mary Waggoner,　　　:
in her official capacity as a member　　　:
of the Board of School Directors;　　　　:
Philip A. Melnick, Sr. and Chattle　　　:
Melnick, husband and wife, as　　　　:
parents of three children within　　　　:
the Butler Area School District, as　　　:
taxpayers within the Butler Area School :
District; and as voters within the Butler :
Area School District; Michael Carben　　:
and Julie Carben, husband and wife,　　:
as parents of two children within the　　:
Butler Area School District, as　　　　:
taxpayers within the Butler Area School :
District, and as voters within the Butler :
Area School District; Michele Curzi,　　:
as a parent of five children within the　　:
Butler Area School District, as a　　　　:
taxpayer within the Butler Area School :
District, and as a voter within the Butler :

Area School District; Laura Ice, as a :
parent of two children within the Butler :
Area School District, as a taxpayer :
within the Butler Area School District, :
and as a voter within the Butler Area :
School District; James Lindsay and :
Meredith Lindsay, husband and wife, :
as parents of one child within the Butler :
Area School District, as taxpayers :
within the Butler Area School District, :
and as voters within the Butler Area :
School District; and Brad D. Leslie, :
as a parent of a student-athlete within :
the Butler Area School District, as a :
taxpayer within the Butler Area School :
District, and as a voter within the Butler :
Area School District, :
                Petitioners :
 : No. 647 M.D. 2020
            v. :
 :
Dr. Rachel Levine, Secretary of the :
Pennsylvania Department of Health; :
Noe Ortega, acting Secretary of the :
Pennsylvania Department of Education; :
and The Honorable Thomas W. Wolf, :
Governor of Pennsylvania, :
              Respondents :

## _ORDER_

AND NOW, this 3rd day of October, 2022, the Court receives the parties' post-submission filings submitted on August 4, 2021, and December 28, 2021. It further is ordered that Respondents' Preliminary Objections I and VII are deemed to be withdrawn. Respondents' Preliminary Objections II through VI are

overruled.  Respondents shall answer the petition for review within 30 days of the date of this order.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Butler Area School District; Alvin   :
Vavro, in his official capacity as   :
President of the Board of School   :
Directors; Jennifer Cummings, in   :
her official capacity as Vice President :
of the Board of School Directors;   :
John Conrad, in his official capacity   :
as a member of the Board of   :
School Directors; Jennifer Daniels-   :
Wells, in her official capacity as a   :
member of the Board of School   :
Directors; Bill Halle, in his official   :
capacity as a member of the   :
Board of School Directors; Thomas   :
Harrison, in his official capacity as a   :
member of the Board of School   :      No. 647 M.D. 2020
Directors; Alice Nunes, in her   :
official capacity as a member of the   :
Board of School Directors; Gary   :
Shingleton, in his official capacity   :
as a member of the Board of   :
School Directors; Mary Waggoner,   :
in her official capacity as a member   :
of the Board of School Directors;   :
Philip A. Melnick, Sr. and Chattle   :
Melnick, husband and wife, as   :
parents of three children within   :
the Butler Area School District, as   :
taxpayers within the Butler Area   :
School District; and as voters within   :
the Butler Area School District;   :
Michael Carben and Julie Carben,   :
husband and wife, as parents of two   :
children within the Butler Area   :
School District, as taxpayers within   :
the Butler Area School District, and   :
as voters within the Butler Area   :
School District; Michele Curzi, as a   :
parent of five children within the   :
Butler Area School District, as a   :
taxpayer within the Butler Area   :

School District, and as a voter within the Butler Area School District; Laura Ice, as a parent of two Children within the Butler Area School District, as a taxpayer within the Butler Area School District, and as a voter within the Butler Area School District; James Lindsay and Meridith Lindsay, husband and wife, as parents of one child within the Butler Area School District, as taxpayers within the Butler Area School District, and as voters within the Butler Area School District; and Brad D. Leslie, as a parent of a student-athlete within the Butler Area School District, as a taxpayer within the Butler Area School District, and as a voter within the Butler Area School District,

                  Petitioners

      v.

Dr. Rachel Levine, Secretary of the Pennsylvania Department of Health; Noe Ortega, acting Secretary of the Pennsylvania Department of Education; and The Honorable Thomas W. Wolf, Governor of Pennsylvania,

                  Respondents      :      ARGUED:  June 9, 2021


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge

CONCURRING AND DISSENTING
OPINION BY JUDGE CEISLER               FILED:  October 3, 2022

I respectfully concur in part and dissent in part. While I agree with most of the well-reasoned Majority Opinion, I disagree with the Majority's ruling that overruled Respondents' Preliminary Objection IV relating to the December 10, 2020 "Order of the Governor of the Commonwealth of Pennsylvania Directing Limited-Time Mitigation" (Mitigation Order).

The Mitigation Order suspended sporting events and in-person extracurricular activities in schools for a discrete period of time in order to control the spread of COVID-19. The Governor issued the Mitigation Order pursuant to his police and emergency powers under Section 7301 of the Emergency Management Services Code (Emergency Code), 35 Pa. C.S. § 7301. Section 7301(b) and (c) of the Emergency Code gives the Governor emergency powers when responding to a "disaster," including the authority to "issue and rescind executive orders, proclamations, and regulations which shall have the force and effect of law." 35 Pa. C.S. § 7301(b) and (c). Our Supreme Court has explained that these "broad" emergency powers "are firmly grounded in the Commonwealth's police power . . . 'to promote the public health, morals or safety and the general well-being of the community.'" *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 886 (Pa. 2020) (citation omitted).

As the Majority notes, in 2021, Pennsylvania voters approved two amendments to the Pennsylvania Constitution that placed some constraints on the Governor's authority to act in a disaster emergency. Article IV, Section 20 of the Pennsylvania Constitution now states:

(a) A disaster emergency declaration may be declared by executive order or proclamation of the Governor upon finding that a disaster has occurred or that the occurrence or threat of a disaster is imminent that threatens the health, safety or welfare of this Commonwealth.

(b) Each disaster emergency declaration issued by the Governor under subsection (a) shall indicate the nature, each area threatened and the conditions of the disaster, including whether the disaster is a natural disaster, military emergency, *public health emergency*, technological disaster or other general emergency, as defined by statute. *The General Assembly shall, by statute, provide for the manner in which each type of disaster enumerated under this subsection shall be managed*.

(c) *A disaster emergency declaration under subsection (a) shall be in effect for no more than twenty-one (21) days, unless otherwise extended in whole or part by concurrent resolution of the General Assembly*.

(d) Upon the expiration of a disaster emergency declaration under subsection (a), *the Governor may not issue a new disaster emergency declaration based upon the same or substantially similar facts and circumstances without the passage of a concurrent resolution of the General Assembly expressly approving the new disaster emergency declaration*.

Pa. Const. art. IV, § 20 (emphasis added). Furthermore, Article III, Section 9 authorizes the General Assembly to extend or terminate a disaster emergency declaration by a simple majority vote. *Id.* art. III, § 9.

In their Petition for Review, Petitioners aver that the Governor's Mitigation Order contravenes the provisions of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 to 27-2702, and usurps local school boards' power under the School Code to act during a temporary emergency. Pet. for Rev. ¶¶ 82-89, 95-96. Petitioners also aver that Section 7301 of the Emergency Code does not authorize the Governor to close schools, as that

power is reserved exclusively for local school boards. *Id.* ¶¶ 78-79.[1] Specifically, they assert that the School Code gives school boards the authority to "adopt and enforce such reasonable rules and regulations as [they] may deem necessary and proper, regarding the management of . . . school affairs," Section 510 of the School Code, 24 P.S. § 5-510, and to "[k]eep the schools of the district in session such days and number of days per week as they deem necessary or desirable" during temporary emergencies, Section 520.1 of the School Code, 24 P.S. § 5-520.1.[2]  Pet. for Rev. ¶¶ 85, 88.

As the Majority points out, however, Petitioners' chief argument regarding the "usurping" of local school boards' authority is that the Governor could conceivably declare a disaster emergency and then extend it indefinitely "to the point where he is running local school districts." Pet'rs' Br. in Opp'n to Prelim. Objs. at 26. The Majority recognizes that this "contingency is now foreclosed by the recent constitutional amendments," but nonetheless overrules the Preliminary Objection because, in the Majority's view, "the question remains whether the Commonwealth's police powers in disaster emergencies may override specific grants of emergency powers given to local public school districts." *Butler Area Sch. Dist. v. Levine* (Pa. Cmwlth., No. 647 M.D. 2020, filed October 3, 2022), slip op. at 17. I disagree, because I do not believe such a question remains.

While local school boards are authorized to take certain actions relating to school affairs during a *temporary emergency*, the Governor clearly has the power to act unilaterally during a *disaster emergency* under the Emergency Code. Petitioners

---

[1] As Respondents correctly note, the Governor's Mitigation Order did not close schools. It merely limited in-person sporting events and extracurricular activities in schools for a three-week period.

[2] Added by the Act of January 14, 1952, P.L. (1951) 1940.

cite no authority for the proposition that a school board's powers in a temporary emergency supersede the Governor's broad police powers in a disaster emergency. *See Dist. of Columbia v. Brooke*, 214 U.S. 138, 149 (1909) (recognizing that an exercise of police power is "one of the most essential of powers, . . . [and] always one of the *least limitable of the powers of government*") (emphasis added). Rather, once the Governor declares a disaster emergency, the Emergency Code grants him expansive emergency management powers, including the power to issue executive orders that "*shall have the force and effect of law*," 35 Pa. C.S. § 7301(b) (emphasis added), as well as the power to "[s]uspend the provisions of *any regulatory statute prescribing the procedures for conduct of Commonwealth business*, or the orders, rules or regulations of any Commonwealth agency, *if strict compliance with the provisions of any statute*, order, rule or regulation *would in any way prevent, hinder or delay necessary action in coping with the emergency*," 35 Pa. C.S. § 7301(f)(1) (emphasis added). It is evident from these provisions that the General Assembly intended that *the Governor* – not state agencies or local school boards – has the ultimate decision-making authority when it comes to managing a disaster emergency in our Commonwealth. *See Wolf v. Scarnati*, 233 A.3d 679, 704 (Pa. 2020) (recognizing that, in enacting the Emergency Code, the General Assembly decided "that the Governor should be able to exercise certain powers when he or she makes a 'finding that a disaster has occurred or that the occurrence of the threat of a disaster is imminent'" and "made the basic policy choices about which circumstances are necessary to trigger the Governor's powers under the statute") (quoting 35 Pa. C.S. § 7301(a)); *id.* at 705 (stating that "[t]he General Assembly, under its lawmaking powers, could have provided the Governor with less expansive powers under the Emergency . . . Code" but "[i]t did not do so").

More importantly, Petitioners' concerns that the Governor's powers under the Emergency Code are unfettered have been eliminated by the recent amendments to the Pennsylvania Constitution. Article III, Section 9 permits the General Assembly to extend or terminate a disaster emergency declaration, or any portion thereof, by a simple majority vote, without the need for the Governor's review or approval. Article IV, Section 20 also limits the duration of a disaster emergency declaration to 21 days, absent an affirmative extension by concurrent resolution of the General Assembly. These measures were put into place, in large part, to prevent the hypothetical scenario envisioned by Petitioners, in which the Governor could continue to unilaterally extend a disaster declaration until he was essentially "running local school districts." Pet'rs' Br. in Opp'n to Prelim. Objs. at 26.

Our Supreme Court recently observed, in a case involving an executive order issued during the COVID-19 pandemic, that "[t]he protection of the lives and health of millions of Pennsylvania residents is the *sine qua non* of a proper exercise of police power." *Friends of Danny DeVito*, 227 A.3d at 892. I believe the Emergency Code gave the Governor the authority to issue the Mitigation Order to control the spread of COVID-19 in our schools during the height of the pandemic. *See id.* at 889 ("The COVID-19 pandemic is, by all definitions, a natural disaster and a catastrophe of massive proportions."); *Wolf*, 233 A.3d at 705 ("[I]t is the scope of the emergency, not the Governor's arbitrary discretion, that determines the extent of the Governor's powers under the [Emergency Code]."). Therefore, unlike the Majority, I would conclude that the Petition for Review fails to state a legally sufficient claim that the Governor's Mitigation Order, issued during a disaster emergency, violated the School Code or improperly usurped the authority of local school boards.

Accordingly, because I would sustain Respondents' Preliminary Objection IV relating to the Governor's Mitigation Order, I respectfully dissent from that aspect of the Majority's Opinion.

_____
ELLEN CEISLER, Judge

Judges Wojcik and Dumas join in this Concurring and Dissenting Opinion.